UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DENISE LAMAUTE,**

  *Plaintiff,*

**v.**

**SAMANTHA POWER,** *Administrator, U.S. Agency for International Development,*[1]

  *Defendant.*

Case No. 1:19-cv-3702-RCL

## MEMORANDUM OPINION

Before the Court is plaintiff Denise Lamaute's motion to compel defendant United States Agency for International Development to produce documents responsive to her First Set of Requests for Production of Documents. ECF No. 19. For the reasons stated below, Lamaute's motion to compel will be granted in part and denied in part.

## I.   BACKGROUND

Lamaute is a sixty-seven year-old, Black woman who has worked at the Agency for almost two decades. Compl. ¶ 7. She claims that the Agency discriminated against her on the basis of race, sex, and age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, when it selected Mark Pickett, a white man, over her for a senior level position she applied for in 2017. Lamaute alleges that she was objectively more qualified for the GS-15 supervisory business specialist position she applied for in the Agency's Bureau for Europe and Eurasia. Mainly, she alleges that her years of experience and expertise in the economic growth sector makes her the objectively

---

[1] On May 3, 2021, Samantha Power was sworn in as the Administrator of the U.S. Agency for International Development and was automatically substituted as the named defendant. *See* Fed. R. Civ. P. 25(d).

better candidate compared to Pickett, who had fewer years of experience related to economic growth. *Id.* at ¶¶ 62–145. Lamaute further alleges that the Agency deviated from standard hiring practices and procedures during the hiring process. For instance, she alleges that the Agency failed to ensure a diversity-conscious hiring process, because the three-person hiring committee that interviewed her and Pickett for the position was comprised entirely of white men, and because the Agency did not provide diversity information for the hiring committee to review during the hiring process. *Id.* at ¶¶ 41–44. She also alleges that the hiring committee asked Lamaute and Pickett different questions during their respective interviews. *Id.* at ¶¶ 46–54.

Last May, Lamaute served her first set of interrogatories and requests for production of documents on the Agency. Mot., Ex. A. Defendants responded to some requests and objected to other requests. Mot., Ex. B. Lamaute asserted that several of the responses were inadequate. Mot., Ex. C. Between October 2020 and December 2020, the parties met and conferred twice and exchanged emails, and they resolved some of the discovery disputes. Mot. at 5. Yet, Lamaute argues that the Agency "has failed to produce complete responses to the majority of [her] requests." *Id.* She filed her motion to compel the Agency to produce documents to the full extent requested. Specifically, she seeks complete responses to her Requests for Production of Documents Nos. 3, 4, 5, 6, 7, 8, and 11. Lamaute contends that the requested discovery is relevant and proportional to her Title VII and ADEA discrimination claim. *See id.* The Agency opposed the motion, asserting that her requests seek non-relevant information or are not proportional to the needs of the case. Def.'s Opp'n. (ECF No. 26). Lamaute replied, reasserting the relevance and proportionality of her requests. Reply (ECF No. 27).

After briefing was complete, the Agency supplemented its discovery responses. Notice, ECF No. 29. It provided five additional documents in response to Request for Production No. 8.

## II.   LEGAL STANDARD

A party may submit to another party a request for production of documents "within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a). Under Rule 26(b)(1) of Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." In short, considerations of both relevance and proportionality govern the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment. If the court determines that the proposed discovery is outside the scope permitted by Rule 26(b)(1), then it must limit the extent of discovery accordingly. *See* Fed. R. Civ. P. 26(b)(2)(C).

Relevance, for discovery purposes, has been "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). While plaintiffs in discrimination cases have been permitted a broad scope of discovery, "the relevance standard of Rule 26 is not without bite." *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (citation omitted). In discrimination cases, "courts remain concerned about 'fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far-ranging discovery requests' and have therefore limited discovery to the issues involved in the particular case." *Pleasants v. Allbaugh*, 208 F.R.D. 7, 9 (D.D.C. 2002) (quoting *Hardrick*, 96 F.R.D. 617, 618 (D.D.C. 1983)). Courts may exercise discretion in discrimination

cases by placing reasonable limits in discovery in order to balance the needs and rights of both plaintiff and defendant. *See Glenn v. Williams*, 209 F.R.D. 279, 282 (D.D.C. 2002) (citation omitted). The consideration of proportionality involves balancing the six factors identified in Rule 26(b)(1), where "[n]o single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional." *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017) (internal quotation mark and citation omitted).

When a party objects to a discovery request, the requesting party may—after first attempting to resolve the issue by conferring with the refusing party—file a motion to compel. Fed. R. Civ. P. 37(a)(1). The party that brings the motion to compel bears the initial burden of "explaining how the requested information is relevant." *Oxbow Carbon*, 322 F.R.D. at 5–6; *see also* Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment ("[T]he [amendment] does not place on the party seeking discovery the burden of addressing all proportionality considerations."). Once relevance has been established, the burden shifts to the party opposing discovery to show why the discovery should not be permitted. To satisfy that burden the refusing party must make a specific, detailed showing. *See, e.g.*, *Oxbow Carbon*, 322 F.R.D. at 6.

## III.   ANALYSIS

Lamaute seeks complete responses to Requests for Production Nos. 3, 4, 5, 6, 7, 8, and 11. Given the logical connection between some of the requests, the Court will group certain requests together to determine the appropriate scope of discovery. The Court will address the requests in the following order: Request Nos. 3 and 4 (communications about Lamaute and Pickett); No. 7 (documents related to Pickett's performance); Nos. 5 and 6 (internal reports and communications about diversity and inclusion); No. 8 (hiring policies, procedures, and protocols); No. 11 (information about the racial and gender composition of hiring committee members).

While the Court will consider the relevance and proportionality of each discovery request in turn, it notes that four of the six proportionality factors—the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, and the parties' resources—uniformly apply to all requests.

First, Lamaute raises serious employment discrimination allegations in this case, and the importance of the issues at stake are unquestionable. *See* Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment (citation omitted) (recognizing that cases in public policy spheres, such as employment practices, "may have importance far beyond the monetary amount involved"). The Agency does not disagree with the significance of the issues in this case, stating that "workplace discrimination is unacceptable." Def.'s Opp'n. at 5. Accordingly, the Court finds the importance of the issues at stake here weighs in favor of compelling production.

Second, the amount in controversy in this case is considerable. Lamaute asserts that the amount of damages likely reaches "millions of dollars." Mot. at 13. The Agency disputes her estimation, but stops short of providing its own estimate. Def.'s Opp'n. at 5. It does, however, suggest that at least hundreds of thousands of dollars are at stake. *Id.* Given statutory caps on damages and the relatively small difference between Grades 14 and 15 on the GS pay scale, the Court concludes that the magnitude of damages is hundreds of thousands and not millions of dollars. Yet, this factor alone does not tilt in favor of one party over another. The amount in controversy must be compared with the estimated cost of discovery to determine the proposed discovery's proportionality. *See Oxbow Carbon*, 322 F.R.D. at 7–8.

Third, consideration of the parties' relative access to relevant materials weighs in favor of Lamaute. The Court finds that Lamaute lacks access to the vast majority of documents she requests, while the Agency has access. As such, the burden properly "lies heavier on the party who has more

information." Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment; *see also Oxbow Carbon*, 322 F.R.D. at 8.

Fourth, the Agency's resources are limited. *See* Def.'s Opp'n., Ex. A, Ohlweiler Decl. ¶¶ 4–7 (stating that there are only 9 attorneys and 2 paralegals in the relevant division, and describing the increased workload related to COVID-19 workplace issues). Nonetheless, "consideration of the parties' resources does not foreclose discovery requests addressed to an impecunious party, nor justify unlimited discovery requests addressed to a wealthy party." Fed. R. Civ. P. 26, advisory committee's note to 2015 amendments. This factor also does not automatically weigh in favor of one party over another. The resource factor must be considered along with the burden or expense of producing the requested discovery. *See George Washington Univ.*, 2020 WL 3489478, at *5.

The Court will consider the remaining two proportionality factors—the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit—in relation to these findings.

### A. Request for Communications About Lamaute and Pickett

Lamaute requests that the Agency:

Request No. 3: "Produce all communications—including but not limited to email, fax, memorandum, text messages, instant messages sent using third party messaging services (such as Google chat and iMessage, Slack)—regarding Denise Lamaute, sent to or from the USAID Office of Human Capital and Talent Management, senior leadership, and/or Denise Lamaute's supervisors, from the year 2008 until the present."

Request No. 4: "Produce all communications—including but not limited to email, fax, memorandum, text messages, instant messages sent using third party messaging services (such as Google chat and iMessage, Slack)—sent by USAID personnel regarding Mark Pickett's work performance, qualifications, and/or skills."

Mot., Ex. A, at 6.

The Agency asserts that the requests are overbroad and are not proportional to the needs of the case. Def.'s Opp'n. at 6–13. Instead of responding to the requests in full, the Agency proposes to produce—or has already produced—a narrower sub-set of documents. Specifically, in response to Request No. 3, it proposes to produce all communications concerning the selection decision, Lamaute's skills, qualifications, and work performance, from January 1, 2016 to June 27, 2020 (date of the search), by five individuals: Robert Camilleri, Stephen Little, David Reside, J. Kory Contreras, and Jeanne Mills. Def.'s Opp'n., Ex. C, Mason-Gale Decl. ¶¶ 6–7. Camilleri, Little, and Reside served as members of the interview panel for the position at issue. *Id.* at ¶ 6. Contreras and Mills were identified by the Agency as employees in the Office of Human Capital and Talent Management who were involved in the selection process at issue. *Id.* In response to Request No. 4, the Agency offers to produce all communications concerning the selection decision, Pickett's skills, qualifications, and work performance, from January 1, 2016 to June 27, 2020 (date of the search), by the same five individuals. *Id.* at ¶¶ 10–12. Lamaute maintains that she is entitled to all communications responsive to her original requests. Mot. at 8.

The Court agrees with the Agency that the requests are overbroad and not proportional to the needs of the case. The requests as written go far beyond merely asking for relevant materials. Lamaute argues that the communications "bear directly on a determination of the extent to which factors outside of skills, qualifications, and performances bore on an ultimate promotion decision." *Id.* at 8–9. In other words, some of the discovered materials would help demonstrate what actually motivated the decision-makers to select Pickett over Lamaute. However, Lamaute casts too wide a net to capture this important information.

Discovery "should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the

individuals who are allegedly involved in that conduct." *Nuskey v. Lambright*, 251 F.R.D. 3, 9 (D.D.C. 2008) (internal quotation mark and citation omitted). Lamaute's disparate treatment claim is based on a single non-promotion event that happened in 2017. *See generally* Compl. Request No. 3 is thus overly broad because it seeks all communications regarding Lamaute sent to or from approximately 1,200 individuals from 2008 until the present, without regard to whether these individuals had a direct connection to the promotion decision in 2017. *See* Def.'s Opp'n., Ex. B, Willis Decl. ¶¶ 6–7 (ECF No. 26-2) (counting 612 employees in the Office of Human Capital and Talent Management and 609 senior leaders since January 1, 2008). Similarly, Request No. 4 is seeks non-relevant information as it asks for communications regarding Pickett made by approximately 10,000 individuals, without regard to whether these individuals were directly associated with the promotion decision in 2017. *See* Def.'s Opp'n., Ex. B, Willis Decl. ¶¶ 6–7 (counting at least 10,314 individuals within USAID workforce since January 1, 2008). The requests would cover communications to or from hundreds of individuals who had nothing to do with the promotion decision at issue in this case, and as such, these communications would not help to determine how the Agency made its promotion decision.

Lamaute also argues that the requested communications are relevant in another sense, noting that they "would help prove that she was the most qualified candidate for the position." Mot. at 9. In other words, the discovered materials may help prove her factual allegation that she was a better choice for the senior level position. Even if assuming that the relevance standard is met in this sense, the Court finds that the proposed discovery is not proportional to the needs of the case. Three proportionality factors—the importance of the discovery in resolving the issues, the burden and expense of proposed discovery compared to its likely benefit, and the parties' resources—militate against compelling production.

Communications by individuals who had no connection to the decision-making process—even if some of their communications indicate how they perceived Lamaute or Pickett—would add little practical value to resolving this case. In a non-selection case, the key information is that considered by the hiring panel. *See, e.g., Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1295–99 (D.C. Cir. 1998). People's perception of Lamaute or Pickett, whether positive or negative, that would not have been considered by the hiring panel is not critical information. Additionally, Lamaute has enough information to make her required showing to support her factual allegation, diminishing the importance of the discovery in resolving the case. She already has access to objective information to compare her and Pickett's qualifications. *See* Compl. ¶¶ 62–144. She also has access to performance reviews and evaluations of Pickett. *See* Def.'s Opp'n., Ex. C, Mason-Gale Decl. ¶¶ 15–17.

On the other hand, the burden on the Agency to produce discovery responsive to her broadly written requests is significant compared to its potential benefit. *See* Def.'s Opp'n., Ex. A, Ohlweiler Decl. ¶¶ 13–17 (estimating more than 12,000 hours to complete responsiveness and privilege review to respond to the two requests). Furthermore, requiring the Agency to respond to the requests in full would impose an unduly heavy burden on the Agency given its limited resource capacity. *See id.* ¶ 17 (estimating almost a year to review documents and respond even after retasking all of its attorneys within the relevant legal division). The Court finds that the other proportionality factors do not outweigh these substantial concerns. Thus, the Court will not compel the Agency to bear the burden of producing the requested discovery in its entirety.

In contrast, the Agency's proposals are too narrow. Lamaute is entitled to discovery "reasonably related to the circumstances involved in the alleged discrimination." *Nuskey*, 251 F.R.D. at 9. The Agency's proposal with respect to Request No. 3 excludes certain

communications reasonably related to the non-selection event, such as communications concerning Lamaute *sent to* the hiring committee members. For instance, communications by any of Lamaute's supervisors who corresponded with the decision-makers about Lamaute, even if not necessarily concerning her skills, qualifications, and work performance, or the selection decision, are reasonably related to her case and should be produced. Communications *to* individuals associated with the decision-making process is as important as communications *from* such individuals, because it goes to showing what information the decision-makers may have considered. Furthermore, the Agency has not provided sufficient basis for confining its discovery to communications from just five individuals. If, later during the discovery stage, it is identified that there were other individuals directly associated with the selection process, Lamaute is entitled to all of their communications (received and sent) regarding Lamaute. The same problems afflict the Agency's proposal for Request No. 4.

Lastly, the Agency selected too narrow a time scope. Lamaute is entitled to conduct discovery over a reasonable time. *See Glenn v. Williams,* 209 F.R.D. 279, 282 (D.D.C. 2002). Limiting the discovery period to "a time frame which merely brackets the contested employment action would foreclose plaintiff from elucidating past practices or identifying a pattern." *Nuskey,* 251 F.R.D. at 10 (internal quotation mark and citation omitted). For Request No. 3, Lamaute has chosen 2008—the year she rejoined the Agency—as the relevant cut-off point, and the Agency has chosen 2016. It will therefore be ordered that the period of discovery will be from the day Lamaute rejoined the Agency in 2008 to one year after the promotion decision. *See id.* (setting the time scope from the day of plaintiff's employment to six months after her termination). Similarly for Request No. 4, reasonable time in which to allow discovery is the period from the day Pickett commenced his employment at the Agency in 1998 to one year after the promotion decision.

In sum, with respect to Request No. 3, the Court will compel the production of all communications concerning Lamaute *to or from* Robert Camilleri, Stephen Little, David Reside, J. Kory Contreras, and Jeanne Mills, as well as all such communications *to or from* any other individuals directly associated with the selection process, if further identified during discovery, from the day Lamaute rejoined the Agency in 2008 to one year after the promotion decision. With respect to Request No. 4, the Court will compel the production of all communications concerning the selection decision, Pickett's skills, qualifications, and work performance *to or from* the same five individuals, as well as all such communications *to or from* any other individuals directly associated with the selection process, if further identified during discovery, from the day Pickett commenced his employment at the Agency in 1998 to one year after the promotion decision.

### B. Request for Documents Related to Pickett's Performance

Lamaute requests that the Agency:

Request No. 7: "Produce all performance reviews and evaluations of Mark Pickett since 1998. Include any notes or lists stating the names of the individuals contacted in the course of assessing Mark Pickett's performance, regardless of whether those individuals ultimately provided any recorded comments."

Mot., Ex. A, at 7.

The Agency has produced Pickett's performance reviews and evaluations in its possession.[2] *See* Def.'s Opp'n., Ex. C, Mason-Gale Decl. ¶¶ 15–17. The dispute here concerns Lamaute's demand for "any notes or lists stating the names of the individuals contacted in the course of assessing Mark Pickett's performance, regardless of whether those individuals ultimately

---

[2] Specifically, the Agency has produced Pickett's performance reviews from 2010 through 2018. Def.'s Opp'n., Ex. C, Mason-Gale Decl. ¶ 17. It represents that it is Agency policy to destroy employee performance records four years after the date of appraisal, unless required for business use. *Id.* at ¶ 16. Lamaute asks the Court to compel production of Pickett's performance reviews from 1998 through 2010, Reply at 9 n.4, but she provides no reason to question the Agency's representation that it has produced all of Pickett's performance reviews in its possession. Thus, the Court will deny this request.

provided any recorded comments." The Agency objects on the grounds of relevance and proportionality. Def.'s Opp'n. at 18. The Court finds that Lamaute has not carried her burden of establishing relevance with regards to the disputed discovery. She presents no explanation on how the disputed discovery is relevant to her case. *See* Mot. at 18; Reply at 8–9. As the requesting party, Lamaute needed to do more than simply conclude that the request is relevant. *See Oxbow Carbon*, 322 F.R.D. at 5–6. Thus, the Court will deny her motion to compel the production of the disputed discovery.

### C.  Request for Internal Reports and Communications About Diversity and Inclusion

Lamaute requests that the Agency:

Request No. 5: "Produce all internally gathered, non-public, statistics, surveys, studies, and/or reports on diversity, inclusion, and/or workplace culture at USAID, as well as any studies examining, reporting on, and/or comparing workforce diversity across various GS levels."

Request No. 6: "Produce any communications regarding internal initiatives, programs, efforts, and/or committees intended to examine, study, report on, and/or improve diversity, including but not limited to the progress and outcomes of those initiatives, especially at management levels (GS 14-15) of the organization."

Mot., Ex. A, at 7.

In response to Request No. 5, the Agency produced three documents, and a partial data set, and represents that it does not have additional documents responsive to this request that apply to the *entire* Agency. Def.'s Opp'n., Ex. B, Willis Decl. ¶¶ 10–11; Def.'s Opp'n., Ex. E, Kenon Decl. ¶¶ 5–8. Yet, the Agency admits that "other operating units within USAID . . . may address diversity, inclusion, or workplace culture within their operating unit through ad hoc or informal means." Def.'s Opp'n., Ex. E, Kenon Decl. ¶ 9. Lamaute requested all non-public documents relating to diversity and workplace culture within the Agency, which logically includes its operating units. Thus, the Agency's response as to Request No. 5 was inadequate.

Lamaute has carried her burden of establishing the relevance of non-public documents relating to diversity, inclusion, and/or workplace culture within her geographic location. *See* Mot. at 16–17. It is well established that statistical data and comparative information concerning non-party employees in the plaintiff's workplace is relevant evidence in a disparate treatment claim. *See, e.g.*, *Pleasants*, 208 F.R.D. at 9. If discovery reveals evidence showing a pattern of discriminatory treatment of other employees in the same protected group as Lamaute, her claim that she was discriminated against based on her protected class becomes more credible. *See Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015). Conversely, if there is evidence showing internal efforts to promote diversity and inclusion, such information also relates to the Agency's potential defenses, which Lamaute has a right to explore. *See United States ex rel. Shamesh*, 314 F.R.D. at 8. The Agency has, on the other hand, failed to show why discovery is not proportional to the needs of the case. It relies solely on the argument that statistical evidence is not important in individual disparate treatment cases. Def.'s Opp'n. at 14. It does not assert that the discovery request would impose an undue burden or expense. Because of the importance of the issues at stake in the action, and Lamaute's lack of access to this information, the Court finds that considerations of proportionality weigh in favor of production.

For similar reasons, the Court finds the Agency's refusal to produce any documents in response to Request No. 6 unjustifiable. The discovery is relevant because communications about internal efforts to address diversity and inclusion is related to the Agency's potential defenses. Yet, the Agency has failed to specifically show why the discovery should not be permitted. Simply stating that the discovery is not proportional to the needs of the case, without any specific arguments or representations, does not suffice to satisfy its burden. *See, e.g.*, *Oxbow Carbon*, 322 F.R.D. at 6. Nor does it suffice to claim, without more explanation, that the information is protected

from disclosure because of privilege. Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").

To the extent that these requests seek discovery from all of the operating units within the Agency, however, the Court finds that it casts too wide a net to capture relevant information. *See Glenn*, 209 F.R.D. at 281 (imposing a "geographic limitation" on the documents requested and interpreting it as the plaintiff's "employing unit"). Lamaute has not shown a particularized relevance for the production of documents beyond the employing unit that decided not to select her. *See id.* at 282. Thus, the Court will limit the discovery to the Europe and Eurasia Bureau, the "employment unit[], department[], or section[] in which there are employees who are similarly situated to the plaintiff." *Id.* To put differently, the Court will compel the Agency to produce discovery responsive to Request No. 5, with the caveat that discovery will be limited to non-public documents addressing diversity, inclusion, and/or workplace culture within the Europe and Eurasia Bureau. The Court will compel the Agency to produce discovery responsive to Request No. 6, but only those communications relating to internal efforts to promote diversity, inclusion, and/or workplace culture within the Europe and Eurasia Bureau.

The parties also dispute whether Lamaute is entitled to the full underlying data set that the Agency provided for the Government Accountability Office Report GAO-20-477, which "examine[d], among other things, the demographic composition of USAID's workforce in fiscal years 2002 through 2018, differences between promotion outcomes for racial or ethnic minorities, and the extent to which USAID has identified workforce diversity issues and worked to address

those issues." GAO, *USAID: Mixed Progress in Increasing Diversity, and Actions Needed to Consistently Meet EEO Requirements, Why GAO Did This Study*, https://www.gao.gov/products/gao-20-477 (last visited Apr. 16, 2021). Lamaute argues that the Agency's response was inadequate because it produced an incomplete data set, pointing out the discrepancy between the 1,373 employee records she received to the total of 5,766 unique employees who worked at the Agency from 2002 to 2018. Mot. at 14. The Agency explains that it limited production to data about Civil Service employees—thereby excluding Foreign Service employees who were counted toward the total employee count—and their year of birth, GS grade, sex, and race. Def.'s Opp'n. at 16. Lamaute is a Civil Service employee, and her discrimination claim is based on her sex, race, and age. The Agency asserts that any data related to Foreign Service employees is not relevant because it applies different policies to hire and promote Foreign Service employees. *Id.*

The Court will not compel the production of the full data set, because the data goes beyond the type of information that could be used to show a pattern or practice of discrimination related to the type of discrimination at issue in this case. *See Breiterman v. United States Capitol Police*, 324 F.R.D. 24, 33 (D.D.C. 2018) (finding discovery that would encompass types of discrimination that are not at issue in the complaint as "too broad"). Nonetheless, the Agency's response was insufficient. Since the Agency limited the data set in a way that precludes meaningful interpretation of promotion data, the Court will compel production of all pre-existing information about Civil Service employees. Lamaute suggests that the complete and unedited data set would include the following information about each employee: date of employment; occupation; time in each rank before promotion; years of prior federal government experience; and receipt of veterans' preference points. *See* Mot. 14, n. 21; Reply at 6. The additional information about each Civil

Service employee will allow reasonably reliable statistical or comparative analysis of the promotion data. *Cf. Scales v. George Washington Univ.*, No. 89-0796-LFO, 1993 U.S. Dist. LEXIS 10692, at *23–24 (D.D.C. July 27, 1993) (noting that the statistical analysis failed to consider alternative variables to explain the disparity between white and Black employees in certain positions).

Finally, because the PDF format undermines the utility of the data set, the Court will order that the data be produced in a form in which it is ordinarily maintained or in a reasonably usable form. *See* Committee Note to 2006 amendment to Rule 34(b) ("The rule does not require a party to produce electronically stored information in the form it which it is ordinarily maintained, as long as it is produced in a reasonably usable form. But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation."); *see also Covad Communications Co. v. Revonet, Inc.*, 260 F.R.D. 5, 9 (D.D.C. 2009) (requiring production of spreadsheets in native format).

### D.  Request for Hiring Policies, Procedures, and Protocols

Lamaute requests that the Agency:

Request No. 8: "Produce all hiring committee policies, procedures, and protocols, including both general USAID policies as well as any specific to the Bureau for Europe and Eurasia. Additionally, produce any documents pertaining to the interview process, including but not limited to policies regarding interviewing candidates, and relating to other final steps of the hiring and promotion process."

Mot., Ex. A, at 7.

The Agency does not dispute the relevance or proportionality of the discovery. It simply represented that it has produced all responsive documents. Def.'s Opp'n., Ex. D, Contreras Decl.

¶¶ 5–8 (stating that the Agency has produced all responsive documents); Def.'s Opp'n., Ex. C, Mason-Gale Decl. ¶ 20 (stating that the Bureau for Europe and Eurasia does not have any unique hiring committee policies, procedures, and protocols).

The Agency has since supplemented the record after a more thorough search. That additional search and supplementation of the record appears to fully respond to Lamaute's request. Therefore, the Court will not compel a further search or response.

Lamaute also contends that the Agency provided broken hyperlinks to access some of the documents. Reply at. 10. Providing broken hyperlinks that do not actually enable access to responsive documents is not an adequate response. *See* Committee Note to 2006 amendment to Rule 34(b). Therefore, the Court will also order the Agency to ensure that all documents are produced in a reasonably usable form.

### E. Request for Information About the Racial and Gender Composition of Hiring Committee Members

Lamaute requests that the Agency:

Request No. 11: "Produce all documents, records, or communications regarding the racial and gender composition of hiring committees and interviewers at USAID and include the position's GS-level if available."

Mot., Ex. A, at 8.

The Agency did not produce any documents, representing that it does not maintain documents responsive to the request. Def.'s Opp'n., Ex. D, Contreras Decl. ¶ 11 (stating that USAID Human Capital and Talent Management does not maintain records of the racial and gender composition of hiring committees); Def.'s Opp'n., Ex. E, Kenon Decl. ¶ 11 (stating that USAID Office of Civil Rights and Diversity does not maintain records of the racial and gender composition of hiring committees). Because "Rule 34 of the Federal Rules of Civil Procedure only requires

production of documents already in existence," the Agency's response was adequate. *Barnes v. District of Columbia*, 281 F.R.D. 53, 54 (D.D.C. 2012).

The proper method to seek this information is through other discovery tools, e.g., interrogatories, to the extent that the information sought is relevant and proportional to the needs of the case. During meet-and-confer and via email exchanges, the parties attempted to negotiate the scope of the discovery, to be produced in the form of a narrative response. Mot. at 20–21. The Agency offered to provide a narrative response noting the race and gender of the hiring committee members for four GS-15 positions for the Bureau for Europe and Eurasia. Mot., Ex. G, at 51. Lamaute countered, asking for a narrative response identifying the hiring committee members and their race and gender for GS-13, GS-14, and GS-15 positions since 2008. *Id.* at 49. The Agency argues that her demand seeks non-relevant information and imposes an undue burden, estimating more than 600 hours to compile the information. *See* Def.'s Opp'n. at 23–24.

Even setting aside the issue of proper discovery device, the Court finds that the request seeks non-relevant information and is not proportional to the needs of the case. Lamaute argues that information about the race and gender composition of hiring committees would "go towards proving an agency-wide pattern of biased discrimination against non-white, non-male candidates." Mot. at 21. However, as discussed above, Lamaute is only entitled to conduct discovery within her employing unit and over a reasonable time in order to probe whether a pattern of discrimination existed. *See, e.g., Glenn*, 209 F.R.D. at 281–82. Furthermore, the information requested is only marginally relevant to her single-action disparate treatment case, in contrast to the significant burden required to compile the information. *See* Def.'s Opp'n., Ex. B, Willis Decl. ¶ 13 (stating that the Agency has hired 1,274 individuals into GS-13, GS-14, and GS-15 positions since January 1, 2008); *See* Def.'s Opp'n., Ex. D, Contreras Decl. ¶ 12–13 (estimating approximately 30 minutes

to obtain information the racial and gender composition of the hiring committee for each position). In fact, acknowledging this burden, Lamaute has offered to bound her request to the names of hiring committee members for GS-13 through GS-15 positions from 2008 through the present, and to assume the burden of investigating each member's race and gender. Reply at 11. Thus, given the substantial burden of the proposed discovery compared to the likely benefit, Agency's limited resources, and Lamaute's apparent access to a part of the information sought, the Court will limit the discovery to identifying the names of individuals who comprised the hiring committees for GS-13, GS-14, and GS-15 positions in the Europe and Eurasia Bureau from 2008 to one year after the promotion decision at issue.

## IV.   CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part the motion by separate written order.

Date: _____5/18/21_____

Royce C. Lamberth
United States District Judge